# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

SHAUNTAE ROBERTSON,       )
                                               )
      Petitioner,                )
                                               )     Case No. 12-cv-3108
      v.                       )
                                               )     Judge Robert M. Dow, Jr.
GUY PIERCE, Warden,         )
Pontiac Correctional Center,    )
                                               )
      Respondent.            )

## MEMORANDUM OPINION AND ORDER

For the reasons set forth below, the Court denies Petitioner's application for a writ of habeas corpus under 28 U.S.C. § 2254 [8, 40]. The Court declines to certify any issue for appeal pursuant to 28 U.S.C. § 2253(c)(2), and directs the Clerk to enter judgment in favor of Respondent.

## I.      Background

### A.      State Court Proceedings

#### 1.      Criminal Trial

In October 2006, a Cook County, Illinois jury found Petitioner guilty of first degree murder and aggravated discharge of a firearm in connection with the February 1, 2002 shooting death of Ernest Spencer and shooting injury of Michael Blalock. The trial court sentenced Petitioner to 45- and 15-year terms of imprisonment on the two charges, to be served concurrently.

At trial, the State presented testimony from the surviving victim, Michael Blalock, who said that on the day of the shooting he was riding in a car with Ernest "Shaky" Spencer. After parking near 47th and Ashland, Spencer exited the vehicle while Blalock remained in the car.

Blalock testified that he saw Petitioner and another individual approach Spencer on the street, when Petitioner drew a gun and shot Spencer. Petitioner then fired shots into the car at Blalock, grazing Blalock's ribs and his leg. Blalock identified Petitioner as the shooter from a photographic array, from a lineup, and in court. [See 54-1, at 1–3; 54-10, at 4.] The girlfriend of Petitioner's co-defendant, who was riding in a car with Petitioner just before the shooting, corroborated Blalock's story. She testified that when they came upon the parked car that Spencer and Blalock were in, Petitioner said, "There go them bitches right there," and exited the car with a gun in his waistband. She testified that when Petitioner returned to the car, he reported that he "shot Shaky in the gut and shot Mike D. [Blalock] in the leg." [54-10, at 4.]

The State also presented testimony from Petitioner's girlfriend, Delores Wilson, who testified that, on the day of the shooting, Petitioner told her that he had done "something wrong."[1] [54-1, at 4; 54-10, at 4.] In addition, the State introduced Petitioner's written confession, which the investigators obtained on the fourth day of Petitioner's interrogation. [54-10, at 2–3.] In the written statement, Petitioner admitting shooting Spencer and Blalock, although he said that he only intended to shoot Spencer in the leg. [54-10, at 5.]

The State also presented evidence at trial regarding Petitioner's arrest, which occurred on March 7, 2002. Two weeks after the shooting, Petitioner fled to Madison, Wisconsin, where he stayed for an additional two weeks. He then returned to Chicago where he stayed with his girlfriend, Delores Wilson, at the house of Estella Taylor, Wilson's mother. Shortly after Petitioner returned to Chicago, police responded to an anonymous report (allegedly from Wilson's sister) of a man with a gun at Estella Taylor's house. [54-10, at 4.] When the police

---

[1] Sometime after Petitioner's arrest, Wilson gave a statement to police, claiming that Petitioner admitted to her that he had killed someone, but she disavowed that statement at trial.

arrived, Petitioner attempted to flee the house. After a struggle, the officers arrested Petitioner, who was carrying a gun at the time. [54-1, at 2–4.]

Petitioner's defense at trial consisted predominantly of testimony from Dr. Randi Zoot, who testified as an expert in forensic psychology, psychotherapy, and clinical psychology. Dr. Zoot opined that Petitioner has a learning disability that impaired his ability to comprehend his confession. Dr. Zoot previously testified on Petitioner's behalf at suppression hearing where Petitioner unsuccessfully sought to exclude his confession on the basis of his learning disability. [54-10, at 1–5.] Dr. Zoot testified at Petitioner's suppression hearing that Petitioner, who completed eighth grade taking special education classes, had a verbal IQ of 71 and a full-scale IQ of 71 and that he had a second- or third-grade reading level. [54-10, at 3.] Dr. Zoot said that Petitioner was able to knowingly waive his *Miranda* rights, and that while Petitioner knew that he was signing a confession, he "had the 'childlike thinking' that if he could reach his 'people,' his confession could be undone." [54-10, at 3.] Dr. Zoot largely reiterated this testimony at Petitioner's trial, noting Petitioner's cognitive limitations and literacy issues, but surmising that Petitioner could understand what was read to him. [54-10, at 5.]

### 2. Direct Appeal

In the direct appeal of his conviction, Petitioner raised only one issue: "that he was denied a fair trial where the court allowed evidence of his possession of gun unrelated to the murder weapon." [See 54-1, at 1; 54-10, at 5.] In short, Petitioner claimed that there was no evidence linking the gun that the police recovered from him during his arrest to the gun that was used in the shootings, and thus the court should not have admitted that gun into evidence. Petitioner argued that because the gun in question did not match ballistic records of the gun used in the shootings and was inoperable (which the State did not dispute), any probative value of the

gun would be outweighed by its prejudicial effect. Petitioner moved unsuccessfully *in limine* to exclude the gun-related evidence on this basis, but the court agreed to read a limiting instruction to the jury regarding this evidence, instructing them "that evidence has been admitted discussing [Petitioner's] involvement in offenses other than those for which he has been charged," and that "[t]he jury was not to consider such evidence for any purpose other than issues related to [Petitioner's] arrest." [54-1, at 4.] Evidence of the gun was then presented in various forms, including through testimony of the arresting officers, through testimony from Petitioner's girlfriend who said that Petitioner kept a gun in the house (and she later identified the gun in court), and through impeachment of Estella Taylor with her grand jury testimony where she testified about Petitioner's possession of a gun in her home.[2] At the close of trial, the court reread the same limiting instruction to the jury about the use of this so-called "other crimes" evidence. After the jury rendered its verdict, Petitioner moved unsuccessfully for a new trial, arguing that he was prejudiced by the evidence of his possession of a gun that was not the murder weapon.

On August 30, 2010, the Illinois Appellate Court affirmed the judgment of the trial court, rejecting Petitioner's argument that the trial court allowed "extensive and unnecessary details" related to his possession of a gun at the time of his arrest. The court noted that evidence of other crimes is admissible if it is relevant for any purpose other than to show the defendant's propensity to commit crimes, including showing the circumstances surrounding a defendant's arrest. [54-1, at 6 (citing *People v. Coleman*, 633 N.E.2d 654, 663 (Ill. 1994)).] The court concluded that the trial court "did not abuse its discretion in allowing the evidence of the gun to be heard by the jury" because the evidence presented was relevant to the circumstances

---

[2] Petitioner's trial counsel objected to the use of the grand jury transcript at trial, and the trial court sustained the objection in part, allowing the State to use the transcript for impeachment purposes, but excluding certain references, such as Taylor's statement that Petitioner was "waving" the gun around. [See 54-1, at 5.]

surrounding Petitioner's arrest, and that the court appropriately sanitized the presentation of that evidence by (1) excluding certain statements that might be overly prejudicial, and (2) by providing a limiting instruction about the jury's use of the evidence. [54-1, at 7–8].

On October 22, 2010, Petitioner filed a petition for leave to appeal with the Illinois Supreme Court, seeking review of the decision of the Illinois Appellate Court. [54-5.] The Illinois Supreme Court denied the petition on January 26, 2011. [54-6]; *People v. Robertson*, 943 N.E.2d 1106 (Ill. Jan. 26, 2011) (Table).

### 3.     Collateral Proceedings

On November 3, 2010—*i.e.*, after Petitioner filed his petition for leave to appeal with the Illinois Supreme Court, but before that petition was denied—Petitioner filed a *pro se* petition seeking relief under the Post-Conviction Hearing Act, 725 ILCS 5/122-1 *et seq*. [54-10, at 5; 54-18, at 38.] Petitioner argued that his trial counsel was ineffective for failing to contact John Ku (or others similarly situated) as potential witnesses for the defense, asserting that Ku was interviewed by the police and gave an initial description of the shooter, but was unable to identify Petitioner in a lineup. [See 54-18, at 55–60.] On December 10, 2010, the Circuit Court of Cook County dismissed the petition as "frivolous and patently without merit," noting that the presentation of witnesses is a matter of trial strategy that is usually immune from claims of ineffective assistance, and that Petitioner failed to submit an affidavit from any of the potential witnesses that he claimed his attorney should have contacted. [See 54-10, at 5; 54-18, at 58–60 (citing *People v. Roberts*, 743 N.E.2d 1025, 1028 (Ill. App. Ct. 2000) ("When the defendant attacks the competency of his counsel for failing to call or contact witnesses, he must attach to his post-conviction petition affidavits showing the potential testimony of such witnesses and explain the significance of their testimony.")).] Petitioner did not appeal that ruling. [54-10, at 5.]

On April 6, 2012, Petitioner sought leave to file a successive *pro se* petition for post-conviction relief. [See 54-10, at 5.] In his successive petition, Petitioner raised eight grounds for ineffective assistance of trial counsel, based on his attorney's failure to: "(1) argue he was illegally detained by police and that his statement was involuntary; (2) seek a change of venue for his trial due to his two previous proceedings for unlawful use of a weapon; (3) object to hearsay evidence; (4) inform defendant of his constitutional right to testify; (5) move for an acquittal because the verdicts were inconsistent and the evidence did not prove his guilt beyond a reasonable doubt; (6) object to evidence that he refused to submit to a polygraph exam; (7) request a fitness hearing; (8) call Ku as a witness to testify he did not identify defendant in a lineup." [54-10, at 5.] Petitioner also argued that his trial counsel erred by failing to object to and preserve several claims for appeal, that his counsel on direct appeal was ineffective by failing to raise meritorious arguments on appeal, and that he is actually innocent. [54-10, at 5.] The Circuit Court denied Petitioner's request on October 26, 2012, concluding that Petitioner had not met the cause and prejudice requirements to bring a successive petition. [54-10, at 5 ("The court further found that all of the issues raised were either barred by *res judicata* or waiver and that [the affidavit from Petitioner's co-defendant] did not establish [Petitioner's] actual innocence.").]

Petitioner appealed that denial to the Illinois Appellate Court, arguing that he established cause and prejudice by alleging that his counsel on direct appeal failed to challenge (1) the denial of his motion to suppress his confession, and (2) numerous improper statements in the prosecution's closing argument, and explaining that Petitioner's failure to include these claims in his first post-conviction petition was due to his mental deficiencies and the faulty assistance that he received while incarcerated. [See 54-7.] As to the first issue, the Appellate Court concluded that even if Petitioner's confession had been suppressed, there was not a reasonable probability

that the outcome of his trial would have been different, based on the wealth of evidence establishing Petitioner's guilt. [54-10, at 6.] As to the second issue, the Appellate Court concluded that Petitioner had waived his argument regarding his appellate counsel's failure to object to certain statements in the prosecution's closing argument because Petitioner did not raise this issue in his underlying (successive) petition. [54-10, at 7.] Thus, in an order dated May 29, 2015, the Appellate Court affirmed the Circuit Court's denial of Petitioner's successive post-conviction petition. [54-10, at 7.] Petitioner then filed a petition for leave to appeal the Appellate Court's decision, which the Illinois Supreme Court denied on September 30, 2015. [54-12]; *People v. Robertson*, 39 N.E.3d 1009 (Ill. Sept. 30, 2015) (Table).

### B.       Section 2254 Petition

Petitioner filed his petition for writ of habeas corpus in federal court on April 26, 2012. On September 12, 2012, the Court stayed the case pending Petitioner's exhaustion of his state court remedies. [12.] Several years later, on March 12, 2015, Petitioner filed a motion to amend his habeas petition to add three new claims. [40.] Later that year, Petitioner filed a motion to lift the stay [46], reporting that he had fully exhausted his state court remedies. On November 18, 2015, hearing no objections from Respondent, the Court granted Petitioner's motions [40, 46], and lifted the stay. Petitioner's § 2254 petition [1, 8], as amended [40], is now fully briefed.

For clarification, the Court provides the following summary of Petitioner's claims, noting that claims #6, #7, and #8 come from Petitioner's supplemental habeas petition:

1.       Ineffective assistance of trial counsel for failing to:

    a.       argue that Petitioner's arrest was illegal and that his statement should have been suppressed as a result [1, at 5–6];

    b.       object to a copy of his statement going back with the jury during deliberations [1, at 6];

    c.       move for a change of venue [1, at 9];

d.      object to the admission of hearsay testimony that he had confessed to two witnesses [1, at 9–10];

e.      inform Petitioner of his right to testify [1, at 10–11];

f.      move for a verdict of acquittal based on inconsistent verdicts [1, at 11–12];

g.      object to evidence that Petitioner declined to take a polygraph examination [1, at 12];

h.      request a fitness hearing [1, at 12–13];

i.      create a proper record to preserve issues for appeal [1, at 13–14]; and

j.      subpoena a witness who viewed a lineup but did not identify Petitioner as the shooter [1, at 14];

2.      The trial court erroneously admitted a firearm, and evidence relating to that firearm, into evidence [1, at 7];[3]

3.      The State withheld "the gut of evidence" from Petitioner on appeal, including the testimony of Angela Horn from the crime lab [1, at 8];

4.      Ineffective assistance of appellate counsel on direct appeal for failing to raise unspecified claims [1, at 15];

5.      Actual innocence [1, at 16–19];

6.      The prosecutor made improper comments during his closing argument by referencing facts not in evidence and by "improperly minimiz[ing] and attempt[ing] to shift the burden [of proof] onto the defense [40, at 3];

7.      Petitioner's confession was involuntary and thus wrongly admitted [40, at 4]; and

8.      Ineffective assistance of appellate counsel on direct appeal for failing to raise arguments #6 and #7 [40, at 4–5].

## II.    Legal Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996, habeas relief cannot be

granted unless the state court's decision was contrary to, or involved an unreasonable application

---

[3] Petitioner re-raised this argument in his supplemental habeas petition. [See 40, at 5–6.]

of, federal law as determined by the Supreme Court. See *Williams v. Taylor*, 529 U.S. 362, 402–03 (2000); *Warren v. Baenen*, 712 F.3d 1090, 1096 (7th Cir. 2013). Habeas relief "has historically been regarded as an extraordinary remedy, a 'bulwark against convictions that violate fundamental fairness.'" *Brecht v. Abrahamson*, 507 U.S. 619, 633 (1993). This is because habeas petitions require the district court "essentially to reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007). Habeas relief under § 2254 is a "'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102–103 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.2 (1979) (Stevens, J., concurring in judgment)). To obtain habeas relief in federal court, "a state petitioner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

## III. Analysis

### A. Timeliness

Respondent argues that all of the claims in Petitioner's supplemental petition [40] are untimely. Habeas petitions filed under § 2254 are subject to a one-year statute of limitations. The limitations period begins on the latest of four dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)–(D). Here, the statute of limitations began to run on "the date on which the judgment became final by the conclusion of direct review," which occurred 90 days after the Illinois Supreme Court denied Petitioner's petition for leave to appeal—*i.e.*, 90 days after January 26, 2011, or April 26, 2011.[4] Thus, Petitioner's § 2254 petition was due on or before April 26, 2012 (absent any statutory or equitable tolling). Petitioner filed his initial § 2254 petition on April 26, 2012, making his petition timely. However, Petitioner filed his supplemental claims on March 12, 2015—almost three years after the applicable deadline.

Petitioner raises two arguments as to why the untimeliness of his supplemental claims should be excused: (1) because his mental deficiencies impeded his ability to raise the claims earlier, and (2) because the claims depend on facts that are the same in "both time and type" as those on which the original claims rely, such that his supplemental claims relate back to his timely-filed claims. In addition to lacking legal merit, Petitioner's first claim is not persuasive. In order to benefit from equitable tolling[5] based on a mental deficiency, a petitioner must show "at least that he was incapable of preparing and filing a habeas petition while the limitations period was in effect." *United States ex rel. Sowewimo v. Hensley*, 2005 WL 1498846 (N.D. Ill. June 8,

---

[4] The 90 days covers the amount of time in which the petitioner could have filed a petition for a writ of certiorari from the United States Supreme Court. See S. Ct. Rule 13 (stating that a petition for writ of certiorari must be filed within 90 days after entry of judgment); *Gonzalez v. Thaler*, 132 S. Ct. 641, 653 (2012) (holding that if a petitioner does not seek certiorari to Supreme Court, the judgment becomes final under § 2244(d)(1)(A) "when the time for filing a certiorari petition expires").

[5] AEDPA's one-year limitations period is also equitably tolled during the pendency of a "properly filed" application for post-conviction relief. See *Pace v. DiGuglielmo*, 544 U.S. 408, 410 (2005); 28 U.S.C. § 2244(d)(2). Petitioner's "properly filed" post-conviction petition was resolved on December 10, 2010, when the Circuit Court of Cook County dismissed the petition as "frivolous and patently without merit." Because this occurred before the one-year limitations period ended, Petitioner cannot benefit from equitable tolling based on that filing. Petitioner is ineligible for equitable tolling during the pendency of his *successive* petition because such petitions are not considered "properly filed" where leave to file is denied, as it was here. See *Martinez v. Jones*, 556 F.3d 637, 639 (7th Cir. 2009).

2005) (citing *Miller v. Runyon*, 77 F.3d 189, 191 (7th Cir. 1996) ("[M]ental illness tolls a statute of limitations only if the illness *in fact* prevents the sufferer from managing his affairs and thus from understanding his legal rights and acting upon them.")); see also *Holland v. Florida*, 560 U.S. 631, 649 (2010) ("A petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." (internal quotation marks omitted)). Here, Petitioner filed a 36-page petition in this Court on the precise day that the petition was due, listing distinct claims labeled "A" through "M," and including a set of labeled exhibits. Any argument that Petitioner's mental deficiencies somehow prevented him from adding three additional claims into his cogent and orderly petition is unavailing.

As to Petitioner's relation-back argument, the Supreme Court has held that "[a]n amended habeas petition * * * does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Mayle v. Felix*, 545 U.S. 644, 650 (2005) ("If claims asserted after the one-year period could be revived simply because they relate to the same trial, conviction, or sentence as a timely filed claim, AEDPA's limitation period would have slim significance."). The Supreme Court provided several examples as to when a claim relates back to the original petition:

> For example, in *Mandacina v. United States*, 328 F.3d 995, 1000–01 (8th Cir. 2003), the original petition alleged violations of *Brady v. Maryland*, 373 U.S. 83 (1963), while the amended petition alleged the Government's failure to disclose a particular report. Both pleadings related to evidence obtained at the same time by the same police department. The Court of Appeals approved relation back. And in *Woodward v. Williams*, 263 F.3d 1135, 1142 (10th Cir. 2001), the appeals court upheld relation back where the original petition challenged the trial court's admission of recanted statements, while the amended petition challenged the court's refusal to allow the defendant to show that the statements had been recanted. See also 3 J. Moore, et al., Moore's Federal Practice § 15.19[2], p. 15–

82 (3d ed. 2004) (relation back ordinarily allowed "when the new claim is based on the same facts as the original pleading and only changes the legal theory").

*Id.* at 667 n.7.

The first and second claims in Petitioner's supplemental petition—*i.e.*, that the prosecutor made improper comments during his closing argument and that Petitioner's confession was involuntary and thus wrongly admitted—are factually distinct from the claims in the original petition; none of the claims in the initial petition references the prosecutor's closing argument or Petitioner's written confession.

The third claim in Petitioner's supplemental petition—*i.e.*, that his appellate counsel was ineffective for failing to raise these two claims on appeal—*does* relate to Petitioner's claim in his original petition that his appellate counsel was ineffective because he only raised one issue on appeal and thus "fail[ed] to raise the obvious constitutional issues of record." [1, at 15.] But the fact that the two claims both derive from the Sixth Amendment and relate to the same time period (*i.e.*, Petitioner's direct appeal) is not enough to satisfy the relation-back doctrine. The key question is whether the claims relate to the same core set of facts. See, *e.g.*, *Ha Van Nguyen v. Curry*, 736 F.3d 1287, 1297 (9th Cir. 2013) ("[T]he 'time and type' language in *Mayle* refers not to the claims, or the grounds for relief. Rather, it refers to *the facts that support those grounds*."). And here, because Petitioner's original ineffective-assistance-of-appellate-counsel claim lacks any factual specificity, it is impossible to conclude that Petitioner's supplemental claim shares a common core of facts with that original claim. To hold otherwise would allow a habeas litigant to avoid AEDPA's one-year limitations period by filing placeholder claims such as this one.

Petitioner filed his amended habeas petition [40] long after AEDPA's one-year limitations period ended. The three new claims that Petitioner raised in his amended petition are

not eligible for statutory or equitable tolling, nor do they relate back to Petitioner's timely-filed claims. Accordingly, these claims must be dismissed as untimely.

**B.     Cognizability**

Respondent argues that two of Petitioner's claims—his claim relating to the admission of gun-related evidence at trial and his claim of actual innocence—are not cognizable on federal habeas review. The Court agrees.

In his federal petition, Petitioner argues that the trial court impermissibly admitted evidence relating to the gun that police found on Petitioner at the time of his arrest (*i.e.*, the so-called "other crimes" evidence). [See 1, at 7–8; 40 at 5–6.] Petitioner raised a similar argument in his direct appeal, but the Illinois Appellate Court rejected that argument and affirmed the judgment of the trial court. [54-1, at 6 (citing *People v. Coleman*, 633 N.E.2d 654, 663 (Ill. 1994)).] Because the admissibility of this evidence is a matter of state law, Petitioner's claim is not cognizable in a federal habeas petition. See *Robertson v. Hanks*, 140 F.3d 707, 712 (7th Cir. 1998) (holding that an "evidentiary ruling by a state court is not cognizable in a federal habeas corpus proceeding"); *Gladney v. Pollard*, 799 F.3d 889, 895 (7th Cir. 2015) ("[A] federal court may not issue the writ on the basis of a perceived error of state law."); *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (same); *Hayes v. Battaglia*, 403 F.3d 935, 939 (7th Cir. 2005) ("[I]f (as [petitioner] insists) the evidence should have been excluded as a matter of Illinois law that is none of our concern. Section 2254 is not a means to enforce rules of state law." (internal citation omitted)).

Before moving on, the Court notes that intermingled within Petitioner's "other crimes" argument is a seemingly distinct argument that the "the gut of evidence and legitiment [sic] records was kept withheld from the defense on appeal," including the testimony of Angela Horn

from the crime lab. [1, at 8.] Petitioner does not say who withheld this information on appeal or provide any detail as to his efforts to obtain this information. Construing Petitioner's allegations broadly, this claim appears unrelated to Petitioner's "other crimes" argument, and therefore the Court will consider it separately. (However, as explained below, Petitioner procedurally defaulted on this claim by failing to raise it through one complete round of state court review.)

Petitioner also seeks federal habeas relief based on his alleged actual innocence. On its own, actual innocence is not a cognizable claim in a federal habeas petition. *Herrera v. Collins*, 506 U.S. 390, 400 (1993) ("'[A]ctual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits."); see also *Milone v. Camp*, 22 F.3d 693, 699 (7th Cir. 1994) ("A claim of actual innocence is relevant to determining whether a habeas corpus petition may be brought before a federal tribunal at all; it is not ordinarily cognizable in determining whether the writ should issue."); *Gladney*, 799 F.3d at 895 ("The Supreme Court has not recognized a petitioner's right to habeas relief based on a stand-alone claim of actual innocence."). By contrast, Illinois courts *do* recognize actual innocence claims as free standing claims based on the Illinois Constitution. See *People v. Washington*, 665 N.E.2d 1330, 1337 (Ill. 1996). Accordingly, Petitioner's actual innocence claims are dismissed to the extent they purport to be standalone bases for federal habeas relief.

### C.     Procedural Default

In accordance with § 2254(b)(1)(A)'s exhaustion requirement, "a claim [is] procedurally defaulted when a petitioner fails to 'fairly present' his claim to the state courts, regardless of whether he initially preserved it with an objection at the trial level." *Richardson v. Lemke*, 745 F.3d 258, 268 (7th Cir. 2014) "To fairly present his federal claim, a petitioner must assert that

claim throughout at least one complete round of state-court review, whether on direct appeal of his conviction or in post-conviction proceedings." *Id.* (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)); see also *Mulero v. Thompson*, 668 F.3d 529, 536 (7th Cir. 2012); *Johnson v. Loftus*, 518 F.3d 453, 455 (7th Cir. 2008) ("[I]f a specific claim is not presented to the state court when it is required to be, that claim is defaulted."); *Smith v. Gaetz*, 565 F.3d 346, 352 (7th Cir. 2009) (to avoid procedural default, a petitioner must "raise the claim at each level of state court review"); *Stevens*, 489 F.3d at 894 ("Adequate presentation of a claim requires a petitioner to present both the operative facts and the legal principles that control each claim to the state judiciary." (citation and internal quotation marks omitted)). "In Illinois, this means that a petitioner must have directly appealed to the Illinois Appellate Court and presented the claim in a petition for leave to appeal to the Illinois Supreme Court." *Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007).

Similarly, if a state court denies relief "by relying on a state law ground that is both independent of the federal question and adequate to support the judgment, federal habeas review of the claim is foreclosed." *Carter v. Douma*, 796 F.3d 726, 733 (7th Cir. 2015) (quoting *Kaczmarek v. Rednour*, 627 F.3d 586, 591 (7th Cir. 2010)); see also *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). "A procedural failure to raise the federal claim as required by state procedural rules, often called a procedural default, is a common example of such an independent and adequate state ground." *Carter*, 796 F.3d at 733.

### 1. Independent and Adequate State Law Ground

Respondent argues that the Court should not reach the merits of the claims that Petitioner raised in his proposed successive post-conviction petition because the state court's rejection of that petition on procedural grounds (*i.e.*, pursuant to 725 ILCS 5/122-3) is an independent and

adequate ground for dismissal. See *Richardson*, 745 F.3d at 268 ("When a state court resolves a federal claim by relying on a state law ground that is both independent of the federal question and adequate to support the judgment, federal habeas review of the claim is foreclosed." (citation omitted)). The Court agrees.

In his proposed successive post-conviction petition, Petitioner sought to raise nine separate grounds for ineffective assistance of trial counsel, one generalized claim of ineffective assistance of appellate counsel, and an actual innocence claim based on an affidavit from his criminal co-defendant, Michael McGowan. [54-10, at 5.] The Circuit Court denied Petitioner's request, concluding that Petitioner had failed to satisfy the "cause and prejudice" requirements set forth in 725 ILCS 5/122, and the Illinois Appellate Court affirmed on that same basis. [54-10, at 5 ("On October 26, 2012, the circuit court denied defendant's request for leave to file a successive petition under the [Post-Conviction Hearing] Act, finding defendant had not met the cause and prejudice requirements to bring such a petition); *id.*, at 7 (affirming, finding that Petitioner failed to show "prejudice").]

Courts in this District regularly deny federal habeas claims as procedurally barred where the state court refused to address the claims based on the petitioner's failure to comply with § 5/122. See *Watson v. Pfister*, 2015 WL 1186795, at *5 (N.D. Ill. Mar. 11, 2015); *Thomas v. Pfister*, 2014 WL 2777262, at *7 (N.D. Ill. June 17, 2014); *McKinley v. Harrington*, 2014 WL 1292798, at *7 (N.D. Ill. Mar. 31, 2014), *vacated on other grounds*, 809 F.3d 908 (7th Cir. 2016); *Nitz v. Anglin*, 2014 WL 831610, at *9 (N.D. Ill. Mar. 4, 2014); see also *Woods v. Schwartz*, 589 F.3d 368, 376 (7th Cir. 2009) ("Under Illinois law, '[a]ny claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived.'"

(quoting 725 ILCS 5/122–3)); *Johnson v. Loftus*, 518 F.3d 453, 458 (7th Cir. 2008) ("Illinois has long had a law which states that a prisoner is entitled to only one postconviction proceeding.").

The state court's rejection of Petitioner's successive post-conviction petition bars him from raising those claims in his federal petition. Petitioner waived those claims by not raising them in his first post-conviction petition, and the state court determined that he failed to meet the cause and prejudice standard necessary to present those claims in a successive post-conviction petition. Here, "'equitable considerations of federalism and comity'" require that this Court honor the state court's decision, meaning that federal habeas review of those claims is foreclosed. *Richardson*, 745 F.3d at 268 (quoting *Lambrix v. Singletary*, 520 U.S. 518, 523 (1997)). This foreclosure relates to all of Petitioner's ineffective assistance of trial counsel claims (Claims 1(a)–1(j)), his generalized ineffective assistance of appellate counsel claim (Claim 4), and his actual innocence claim relating to the discovery of new evidence (Claim 5).

## 2. Complete Round of State Court Review

Respondent further argues that Petitioner procedurally defaulted on nearly all of his claims by failing to "fairly present" them in his state court proceedings. See *Richardson*, 745 F.3d at 268 ("To fairly present his federal claim, a petitioner must assert that claim throughout at least one complete round of state-court review, whether on direct appeal of his conviction or in post-conviction proceedings."). The easiest way to determine the scope of Petitioner's procedural default here is to determine which, if any, claims Petitioner *did* fairly present in the state court, such that all remaining claims will be deemed procedurally defaulted.

Starting with Petitioner's direct appeal channel, the only claim that Petitioner raised on direct appeal was "that he was denied a fair trial where the court allowed evidence of his possession of gun unrelated to the murder weapon." [See 54-1, at 1; 54-10, at 5.] Petitioner

appealed this decision regarding the admission "other crimes" evidence all the way up to the Illinois Supreme Court. [See 54-5.] Because Petitioner "fairly presented" this claim (Claim 2, as enumerated above), it is not procedurally defaulted based on a failure-to-raise argument. That being said, the Court already dismissed this claim as non-cognizable in a federal habeas petition because it turns an issue of state law, and thus the fact that the claim was fairly presented is irrelevant for purposes of this order.

Turning then to Petitioner's first post-conviction petition, Petitioner again raised only one issue: that his trial counsel was ineffective for failing to contact John Ku (or others similarly situated) as potential witnesses for the defense. But Petitioner did not appeal the Circuit Court's rejection of that claim, and thus did not raise this claim through one complete round of state court review. Accordingly, Petitioner did not "fairly present" any claims in his initial post-conviction petition.

Finally, Petitioner raised eight distinct issues in his proposed successive post-conviction petition. [See 54-10, at 5.] However, the Circuit Court denied Petitioner's request to file this successive petition because Petitioner did not meet the cause and prejudice requirement set forth in 725 ILCS 5/122-3. In addition to being an independent and adequate state law ground barring review of these claims in Petitioner's federal habeas petition, the Circuit Court's decision (which was affirmed up the chain) also means that the claims in Petitioner's proposed successive petition were not "fairly presented" either. This presents an alternative ground for barring these claims from federal habeas review. See, *e.g.*, *Rios v. Hardy*, 2013 WL 1103480, at *2 (N.D. Ill. Mar. 15, 2013); *Johnson v. McCann*, 2008 WL 4613410, at *1 (N.D. Ill. Oct. 10, 2008). And to be clear, while Petitioner did appeal the Circuit Court's denial of his proposed successive petition all the way up the chain, the appeal concerned the Circuit Court's procedural

determination that Petitioner failed to establish cause and prejudice to file a successive petition; Petitioner *did not* appeal the merits of his successive petition because Petitioner was never granted permission to file that petition.

Respondent earmarks Claim 6 (prosecutor made improper comments during his closing argument) and Claim 7 (Petitioner's confession was involuntary and thus wrongly admitted) as procedurally defaulted based on Petitioner's failure to present these claims for one complete round of state court review, but Respondent's list is too short. Other than Petitioner's claim based on the trial court's admission of "other crimes" evidence—which Petitioner included in his direct appeal and in his subsequent PLA to the Illinois Supreme Court—the Court sees no other claims that were presented through one complete round of state court review. This includes the aforementioned claim regarding Petitioner's inability to obtain certain records in his direct appeal (Claim 3), which is the only remaining claim in Petitioner's federal petition that the Court has not dismissed on an alternative ground already.[6]

### 3. Excusing Procedural Default

Petitioner alleges that all of his procedural defaults should be excused because of (1) his demonstrated mental deficiencies, and/or (2) his actual innocence. Procedural default can be excused where the petitioner demonstrates cause for the default and actual prejudice as a result of the alleged violation of federal law. *Johnson v. Loftus*, 518 F.3d 453, 455–56 (7th Cir. 2008). A procedural default may also be excused "if a failure to consider the claim would result in a fundamental miscarriage of justice because a constitutional violation has probably resulted in the

---

[6] To be clear, Petitioner *did* raise this claim in his PLA on direct appeal, intermingling a single sentence regarding how "the gut of evidence and legitimate [sic] records" were withheld from him on appeal within his larger argument about the admission of "other crimes" evidence. [See 54-5, at 3.] This presentation mirrors Petitioner's presentation of this claim in his federal petition. [See 1, at 8.] Regardless, Petitioner failed to raise this argument in his direct appeal before the Illinois Appellate Court [see 54-2, 54-4], or in his post-conviction petition, and thus the claim is procedurally defaulted.

conviction of one who is actually innocent." *Carter*, 796 F.3d at 734 (internal quotations, citations, and alterations omitted); see also *Crockett v. Hulick*, 542 F.3d 1183, 1193 (7th Cir. 2008) ("When a petitioner presents a defaulted claim for federal habeas review, we may consider it only if he can establish cause and prejudice for the default or that the failure to consider the claim would result in a fundamental miscarriage of justice." (internal citation omitted)).

Petitioner's first claim is that his mental illness caused his procedural defaults. Petitioner points to the diagnosis from Dr. Randi Zoot, Petitioner's expert in forensic psychology and psychotherapy and clinical psychology, who testified at trial that Petitioner had an IQ of 71 and was "in the range of borderline to mild mental retardation." [54-10, at 3; see also 54-13, at 55–60.] Respondent argues that Petitioner's mental shortcomings do not constitute "cause" sufficient to excuse a procedural default. The Court agrees.

"The Supreme Court has defined cause sufficient to excuse procedural default as 'some objective factor external to the defense' which precludes petitioner's ability to pursue his claim in state court." *Harris v. McAdory*, 334 F.3d 665, 668 (7th Cir. 2003) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Examples of "external" impediments include "interference by officials" or where "the factual or legal basis for a claim was not reasonably available to counsel," whereas "[s]omething that comes from a source within the petitioner is unlikely to qualify as an external impediment." *Harris*, 334 F.3d at 668–69 (citing *Murray*, 477 U.S. at 488). The Seventh Circuit relied on this internal/external delineation in concluding that a petitioner's mental illness—*i.e.*, an internal impediment—does not constitute cause for default. See *Harris*, 334 F.3d at 669 ("[Petitioner's] low IQ and limited reading ability are not factors which are 'external' to his defense."); *Williams v. Buss*, 538 F.3d 683, 686 (7th Cir. 2008) (mental incapacity not cause to excuse procedural default); see also *Dellinger v. Bowen*, 301 F.3d 758,

763 (7th Cir. 2002) (petitioner's youth and lack of education did not constitute cause); *Henderson v. Cohn*, 919 F.2d 1270, 1272–73 (7th Cir. 1990) (petitioner's illiteracy and limited education insufficient to establish cause). So too here, Petitioner's mental deficiencies are internal impediments that are insufficient to establish cause for his procedural defaults.

Regarding Petitioner's "actual innocence" theory, a petitioner can avoid procedural default through the "fundamental miscarriage of justice" exception by presenting "'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'" *House v. Bell*, 547 U.S. 518, 537 (2006) (quoting *Schlup v. Delo*, 513 U.S. 298, 321 (1995)); see also *Hayes v. Battaglia*, 403 F.3d 935, 937 (7th Cir. 2005) ("Factual innocence indeed relieves a petitioner of a procedural default, at least when the error affects the finding of guilt * * *."). But the type of evidence required to establish such a "fundamental miscarriage of justice" is greater than that which "could have altered the outcome" of the conviction—it requires evidence "so convincing[] that no reasonable jury could convict," such as "documentary, biological (DNA), or other powerful evidence: perhaps some non-relative who placed him out of the city, with credit card slips, photographs, and phone logs to back up the claim." *Hayes*, 403 F.3d at 938; *House*, 547 U.S. at 536–37 (petitioner must show that, "in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" (citations omitted)); *Schlup v. Delo*, 513 U.S. 298, 324 (1995) (to establish actual innocence, a petitioner must present "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial"); see also *Woods v. Schwartz*, 589 F.3d 368, 377 (7th Cir. 2009).

Petitioner's first actual innocence theory is based on a 2010 affidavit from Petitioner's criminal co-defendant, Michael McGowan, who averred that on the date of the crime, (a) he "never gave [Petitioner] any gun to be used in any crime," (b) he "never seen [sic] [Petitioner] committ [sic] any criminal activity," and (c) that "had [Petitioner's] trial attorney called [him] to take the stand, [he] would have testified to this fact." [1, at 33.] Petitioner argues that McGowan's affidavit contradicts the statement in Petitioner's signed confession that McGowan gave Petitioner a gun and ordered him to kill the victim in this case. [See 1, at 16.]

The McGowan affidavit—which relates primarily to the origin of the murder weapon—is not sufficient "new evidence" to trigger the fundamental miscarriage of justice exception to procedural default. McGowan's affidavit says nothing about whether Petitioner committed the crime; it says only that McGowan did not personally witness Petitioner commit the crime. This is not surprising, as the Circuit Court noted, based on a handwritten statement from McGowan in his own case where he stated that "he waited in the car, a block away from the crime scene, while [P]etitioner and another man went to shoot at the victims." [54-18, at 175.] In addition, even if true, this affidavit does not contradict the resounding evidence identifying Petitioner as the shooter, including the testimony from (a) the surviving victim, (b) the witness who rode with Petitioner to the scene of the crime (who testified that Petitioner exited the vehicle with a gun in his waistband), and (c) Petitioner's girlfriend, as well as Petitioner's own incriminating statements in his written confession. Moreover, even if McGowan's affidavit did call into question the credibility of Petitioner's confession, the Court agrees with the Illinois Appellate Court, which concluded that Petitioner could not show that the result of his trial would have been different had his confession been suppressed in its entirety. [54-10, at 6.] Because McGowan's affidavit is not evidence "so convincing[] that no reasonable jury could convict," it is not

sufficient to excuse Petitioner's procedural default.[7] See *Gladney*, 799 F.3d at 896 ("The reviewing court [must] consider[] the total record—'all the evidence, old and new, incriminatory and exculpatory'—and make[] 'a probabilistic determination about what reasonable, properly instructed jurors would do.'" (quoting *House v. Bell*, 547 U.S. 518, 538 (2006))).

Petitioner's second actual innocence theory is based on his trial counsel's failure to call John Ku to testify on Petitioner's behalf. Petitioner argues that had his counsel called John Ku, Mr. Ku would have revealed that (a) he witnessed the shooting and gave a description of the shooter on the day of the crime, and (b) he was unable to identify the shooter from a lineup of individuals that contained Petitioner.

This evidence also fails to trigger the fundamental miscarriage of justice exception to procedural default. For starters, Petitioner provides no actual evidence to support his speculations as to what John Ku would have said if called to testify (*e.g.*, no affidavit from Mr. Ku or evidence relating to his lineup identification). Instead, Petitioner relies on statement from his trial counsel who allegedly told Petitioner about the lineup while the two "went over some of the discovery" before trial. [1, at 18.] What Petitioner's counsel may or may not have told him about John Ku does not constitute new evidence at all, let alone a "trustworthy eyewitness account[]" that might excuse his procedural default. *Gladney*, 799 F.3d at 896. In addition, a reasonable jury could still convict Petitioner despite an alleged eyewitness's failure to positively identify the shooter in a police lineup. Indeed, there are multiple reasons why one might question the

---

[7] Respondent also notes that the shooting occurred eight years before McGowan came forward with this "new evidence," even though McGowan, as a co-defendant in Petitioner's criminal trial, was aware of the allegations against Petitioner from the outset. While McGowan's interests in his own criminal proceedings may have justified his silence during the trial, his eight-year delay is not readily explainable, and thus weighs against the credibility of his averments (which he provided two months before Petitioner's filing of his initial post-conviction petition). See *Morales v. Johnson*, 659 F.3d 588, 606 (7th Cir. 2011) ("It has been said that such '11th hour' affidavits produced with 'no reasonable explanation' for a long delay are suspect.").

evidentiary value of a witness's failure to identify a criminal from a lineup. See, *e.g.*, *McFowler v. Jaimet*, 349 F.3d 436, 453 (7th Cir. 2003) ("Of course, it is not unheard of for an eyewitness to fail to identify the defendant in a lineup, to pick the wrong person, or to express some ambivalence about her identification, only to later make a positive identification of him in court. Often the apparent inconsistency is explained by such things as the witness's emotional state, her failure to view the lineup with sufficient care, or an unexpected change in the defendant's appearance between the time of the crime and the lineup."); *Mahaffey v. Schomig*, 294 F.3d 907, 917 (7th Cir. 2002) (witness was "recovering from severe head injuries" when he viewed a lineup, which explained his failure to identify the culprit).

In addition, even if John Ku's failed identification had been presented at trial, this one witness statement would not outweigh the testimony of the other eye witness who inculpated Petitioner as the shooter, not to mention the corroborating testimony from other witnesses and Petitioner's own confession. See *Hayes v. Battaglia*, 403 F.3d 935, 937 (7th Cir. 2005) (affidavits from six alibi witnesses were not sufficient to show actual innocence where the government put on six witnesses claiming that the petitioner committed the crime); *Smith v. McKee*, 598 F.3d 375, 388 (7th Cir. 2010) (same, with two alibi witnesses opposing two eye witnesses). Petitioner has failed to show that "in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt," *House*, 547 U.S. at 537, and thus Petitioner's procedural defaults stand.

## IV. Certificate of Appealability

Per Rule 11(a) of the Rules Governing Section 2254 Proceedings, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

Accordingly, the Court must determine whether to grant Petitioner a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

A habeas petitioner does not have an absolute right to appeal a district court's denial of his habeas petition; instead, he must first request a certificate of appealability. See *Miller-El v. Cockrell*, 537 U.S. 322, 335 (2003); *Sandoval v. United States*, 574 F.3d 847, 852 (7th Cir. 2009). A habeas petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *Miller-El*, 537 U.S. at 336; *Evans v. Circuit Court of Cook Cnty., Ill.*, 569 F.3d 665, 667 (7th Cir. 2009). Under this standard, Petitioner must demonstrate that reasonable jurists would find the Court's assessment of his § 2254 claims debatable or wrong. *Miller-El*, 537 U.S. at 336; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). And in cases where a district court denies a habeas claim on procedural grounds, the court should issue a certificate of appealability only if the petitioner shows that (1) jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and (2) jurists of reason would find it debatable whether the district court was correct in its procedural ruling. See *Slack*, 529 U.S. at 484. Similarly, when a habeas petition is dismissed as untimely, a certificate of appealability should issue only if reasonable jurists would find the petition's timeliness "debatable." *Id.* at 485 ("Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further. In such a circumstance, no appeal would be warranted."); *Stamps v. Duncan*, 2014 WL 3748638, at *4 (N.D. Ill. July 30, 2014).

In view of the analysis set forth above, the Court concludes that Petitioner has not made a substantial showing that reasonable jurists would differ regarding the merits of his claims.

Petitioner's claims are untimely, non-cognizable, and/or procedurally defaulted, and thus further review is not warranted. As to the untimeliness of certain claims in Petitioner's supplemental petition and the untenable grounds for tolling, no reasonable jurists would find the timeliness of those claims "debatable." Thus, the Court declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

**V.    Conclusion**

For these reasons, the Court denies Petitioner's application for a writ of habeas corpus under 28 U.S.C. § 2254 [8, 40]. The Court declines to certify any issues for appeal under 28 U.S.C. § 2253(c)(2), and directs the Clerk to enter judgment in favor of Respondent.

Dated: May 5, 2016

_____
Robert M. Dow, Jr.
United States District Judge